UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ADELCHI CAIRA,

                    Plaintiff,

       - against –

MICHAEL J. ASTRUE, Commissioner
of Social Security,

                   Defendant.
-----------------------------------------------------------------x

**MEMORANDUM OF DECISION**

08 CV 4534 (RJD)

DEARIE, Chief Judge.

      Adelchi Caira ("claimant") appeals from a January 25, 2008, decision of Administrative Law Judge ("ALJ") Hazel Strauss denying claimant's application for social security disability insurance benefits. Conceding that the ALJ failed to consider the documented extent of claimant's limitations, the Commissioner argues that the case should be remanded so that the ALJ can decide anew whether claimant might be entitled to benefits. The existing record, however, "provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). Thus, as indicated during oral argument, the case is remanded solely for the calculation of benefits.

**I.    Background.**

      The Court assumes the parties' familiarity with the administrative record and address those facts that are relevant to the issues in dispute.

      Born in 1963 and possessing an eighth-grade education, claimant joined the New York City Department of Sanitation in 1990. Often working seven days per week, claimant lifted up to 100 pounds of garbage at a time. In April 2004, claimant was struck by a car while on the job. Claimant suffered a right shoulder impingement and seven disc herniations in his cervical and

lumbar spines. In April 2005, claimant underwent arthroscopic surgery on his right shoulder to repair a torn bicep and rotator cuff. In March 2006, claimant underwent spinal fusion surgery (a posterior lumbar interbody fusion with bone grafting) performed by Dr. Richard Obedian, a board-certified orthopedic surgeon who treated claimant on a monthly basis from February 2006 until May 2007. Before and after these operations, claimant persistently complained of pain, tingling and numbness in his neck, lower back and right (dominant) shoulder and hand, with doctors regularly assigning his subjective complaints a severity of between 7 and 9 out of 10. In the three years following his injury, at least six physicians, including Dr. Obedian, declared claimant to be "disabled" or "totally disabled." The record shows that claimant's physical and mental symptoms have been treated with, in differing combinations and doses, Ibuprofen, Synthroid, Flexeril, Roxicet, Dilaudid, Norco, Vicodin, Oxycontin, Valium, Ambien, Zoloft and Prozac.

On February 15, 2005, claimant applied to the Social Security Administration ("SSA") for disability insurance benefits dating from April 2, 2004. The SSA denied claimant's application. Claimant requested and received a hearing, held on June 7, 2007. In a decision issued on January 25, 2008, the ALJ found that claimant was "not disabled" and thus ineligible for benefits. The ALJ found that claimant "has the following severe impairments: degenerative disc disease of the lumbar and cervical spines [and] a right shoulder rotator cuff tear status post surgery."[1] (Tr. 14.) Although these impairments prevented claimant from resuming his prior job as a sanitation worker, the ALJ concluded that "claimant has the residual functional capacity . . . to perform a wide variety of sedentary work." (Id. at 15.) Specifically, despite the fact that claimant "cannot perform overhead reaching with his right arm," the ALJ found that

---

[1] Claimant also introduced persuasive evidence to establish that, since the accident, he has suffered from carpal tunnel syndrome and psychological issues, including depression. The ALJ essentially ignored this evidence, which is not vital to today's decision.

claimant "can lift and carry up to ten pound occasionally, can stand or walk for up to 2 hours, and can sit for up to 6 hours of an 8-hour workday." (Id.) By notice dated September 5, 2008, the Appeals Council denied review. Claimant subsequently filed this action in District Court.

On August 25, 2009, the Commissioner served a motion for judgment on the pleadings requesting that this Court affirm the ALJ's finding that claimant is not disabled. On October 6, 2009, claimant served a cross-motion seeking reversal of the ALJ's decision. On January 8, 2010, the Commissioner – adopting a pair of the arguments advanced by claimant – withdrew the request for an affirmance and filed a motion seeking a remand for further development of the administrative record by the ALJ.

## II.  Discussion.

In evaluating claimant's appeal, the Court "'review[s] the administrative record de novo to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard.'" Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir. 2007) (quoting Pollard v. Halter, 377 F.3d 183, 188 (2d Cir. 2004)). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). To support a denial of benefits, the record as a whole "must demonstrate a rational connection between the [ALJ]'s legal conclusion and the medical and lay testimony presented." Williams ex rel. Williams v. Bowen, 859 F.2d 256, 256 (2d Cir. 1988).

Of the established five-step procedure for deciding an applicant's eligibility for disability benefits, the parties' dispute centers on the fifth and final question of whether claimant's residual functional capacity ("RFC") allows him to perform alternative occupations available in

significant numbers in the national economy.[2] See 20 C.F.R. § 416.960(c). As noted above, the ALJ found that claimant has the RFC "to perform a wide range of sedentary work." (Tr. 15.) The Commissioner now concedes that this determination is the product of numerous legal and factual errors.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). Where the ALJ's finding that "the claimant can engage in 'sedentary' work is not supported by substantial evidence," however, a district court should not remand the case "unless the [Commissioner] could offer additional evidence" and "show good cause 'for failure to incorporate such [additional] evidence into the record in [the] prior proceeding.'" Carroll v. Sec'y of HHS, 705 F.2d 638, 644 (2d Cir. 1983) (quoting 42 U.S.C. § 405(g)). By comparison, where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision," a court should remand for the calculation of benefits. Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir. 1999).

    A.    <u>Testimony by vocational expert.</u>

        i.    ALJ's failure to question the vocational expert properly.

At the July 2008 hearing, a vocational expert testified via telephone. The ALJ asked the vocational expert to identify simple jobs available to someone of claimant's age, education and skill level, who can sit for six hours in a day out of eight, stand for two hours in a day, interact with the public with moderate limitation, work independently and respond appropriately to changes in the work environment. (Tr. 422.) The vocational expert responded that such a person

---

[2] The parties agree that plaintiff is not engaged in substantial gainful employment, that his combination of impairments is severe, that these impairments do not meet the criteria for claimant's being disabled by definition and that claimant can no longer engage in his prior work. See generally Dixon v. Heckler, 785 F.2d 1102, 1103 (2d Cir. 1986).

4

could be a pari-mutuel ticket checker, nut sorter or toy stuffer. (Id. at 422-23.) The ALJ then added that "the work should not require frequent overhead reaching with the right dominant upper extremity." (Id. at 423.) The vocational expert removed toy stuffer from the list of potential jobs that such a person could perform, but added hand bander. (Id. at 423-24.) The ALJ then asked if the person could perform those jobs if he "could stand for 15 to 20 minutes at a time before having to sit, and could sit 10 to 20 minutes at a time." (Id. at 424.) The vocational expert answered in the affirmative.[3]

The parties agree that the ALJ committed a pair or errors during this questioning. First, although the ALJ specifically concluded that claimant "can perform sedentary work that does not require [any] overhead reaching with his right upper extremity," (id. at 19), the ALJ asked the vocational expert to identify jobs that do not require "frequent" overhead reaching with the right upper extremity, (id. at 423). Second, the ALJ did not ask the vocational expert if her testimony concerning the jobs that claimant could perform was consistent with those occupations' characteristics as listed within the Directory of Occupational Titles ("DOT").

It cannot be disputed that the vocational expert's testimony was "based on an erroneous standard, and did not adequately account for [claimant]'s actual limitations." Aubeuf v. Schweiker, 649 F.2d 107, 115 (2d Cir. 1981). "The vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job." Id. Prompted by the ALJ, the vocational expert identified

---

[3] Each of the positions comprises "sedentary work," defined as work which "involves lifting no more than 10 pounds at a time" and "involves sitting," even "if walking and standing are required occasionally." 20 C.F.R. § 404.1567(a). According to the vocational expert, the jobs of pari-mutuel ticket checker, nut sorter and hand bander account for fewer than 10,000 positions in the local economy and fewer than 120,000 positions nationwide. (See Tr. 422-24.) The Court assumes without deciding that these jobs exist in "significant numbers in the national economy." 20 C.F.R. § 404.1560(c).

5

jobs suitable for someone incapable of "frequent" overhead reaching. Undeniably, however, infrequent overhead reaching still is more than none at all. Thus, the Commissioner has not produced any evidence, let alone substantial evidence, of alternative employment which this particular claimant – who is incapable of <u>any</u> overhead reaching – "could realistically perform." Id.

Even assuming, contrary to the ALJ's own conclusion, that claimant could perform "frequent" overhead reaching, the ALJ did not question the vocational expert regarding whether the proffered occupations conflicted with this limitation. This failure is legal error. See Soc. Sec. Ruling 00-4P, 2000 WL 1898704 (2000). When the ALJ raised the limitation of "frequent" overhead reaching, for example, the vocational expert withdrew the occupation of toy stuffer, for which reaching is "frequently present." (Cl. Br., Dkt. #32, Ex. A.) Remaining on the list, however, were the jobs of nut sorter, for which reaching also is "frequently present," (id. Ex. D), and pari-mutuel ticket checker, for which reaching is "constantly present," (id. Ex. A).[4] The vocational expert then added the occupation of hand bander, for which reaching also is "constantly present." (Id. Ex. D.) That claimant conceivably "may have had the physical capacity to perform [these] jobs, however, does not warrant rejection of a disability claim" absent any "showing whatever that [claimant] would have been able to perform [the] jobs." Parker, 626 F.2d at 233. Due to the ALJ's lack of an appropriate inquiry, the vocational expert's rationale, if any, for claimant's being able to perform jobs that require "constant" reaching, and some (but not other) jobs that require "frequent" reaching, remains a mystery.

---

[4] The DOT defines "frequent" as occurring from 1/2 to 2/3 of the time, while "constant" refers to activity that occurs more than 2/3 of the time. (See Cl. Br., Exs. A-D.)

ii.  ALJ's evaluation of the treating physician's opinion.

While examining the vocational expert, the ALJ referred to a functional assessment, dated March 16, 2007, in which claimant's treating physician Dr. Obedian checked entries stating that claimant could "stand and/or walk less than an hour in a day, can sit less than four hours in an eight hour day [and] requires bed rest." (Tr. 424-25; see id. at 245-46.) The ALJ conceded that "if [she] were to rely on . . . those limitations then it is clear that the claimant could not perform work for a full eight hour workday." (Id. at 424-25.) That is because "[t]he ability to sit for a total of four hours does not generally satisfy the standard for sedentary work." Connors v. Conn. Gen. Life Ins. Co., 272 F.3d 127, 136 n.5 (2d Cir. 2001).

The ALJ discounted Dr. Obedian's checked entries as "inconsistent with the testimony of the claimant and the treatment notes." (Tr. 19.) First, according to the ALJ, "claimant did not state that he needs bed rest in a typical day." (Id.) The record contradicts this conclusion, however. Claimant testified that although he tried to return to work at the New York City Sanitation Department from December 2005 to January 2006 answering phones, he could not perform this light duty because he "needed to lay down, needed rest throughout the day" and "was in too much pain."[5] (Id. at 388.) In a June 2005 statement to the SSA, moreover, claimant wrote that his "condition requires [him] to get frequent rest" and that sometimes he "stay[s] in bed for the day." (Id. at 81.) Claimant testified generally that he can only sit for about 20 minutes without standing, reclining or "laying down." (Id. at 408.)

Second, the ALJ found that Dr. Obedian's "check offs are inconsistent with [a] narrative report [written by Dr. Obedian] in the same month." (Id. at 19.) In that report, dated May 29, 2007, Dr. Obedian wrote that claimant was "unable to sit for over six hours" and could not

---

[5] Claimant testified that he also tried to do paperwork at the front desk of a friend's gas station in late 2006, but he could not do that either. (Tr. 389.)

7

"stand for more than two hours per day." (Id. at 251.) The ALJ gave "significant weight" to these statements, which are "consistent with an ability to perform sedentary work." (Id. at 16.)

Because a treating physician's well supported diagnosis deserves significant deference, the ALJ "is required to provide 'good reasons' for the weight she gives to the treating source's opinion." Halloran v. Barnhart, 362 F.3d 28, 32, 33 (quoting 20 C.F.R. § 404.1527(d)(2)). The ALJ simply declared, without any analysis, that she gave "significant weight" to the opinion of consulting examiner Dr. Mohammed Iqbal, who examined plaintiff in August 2005 on the SSA's behalf. In his report, Dr. Iqbal concluded that claimant "has no limitation of sitting, standing, walking short distances." (Tr. 216.) The ALJ also gave "significant weight" to the opinion of one Dr. Montorfarno, who reviewed claimant's file in August 2008 for the New York State Office of Disability Determinations, "as consistent with the opinion of Dr. Iqbal and the record as a whole." (Id. at 19.) Dr. Montofarno found that "plaintiff should be capable of, at least, a full range of sedentary work, not requiring very frequent overhead reaching" with the right upper extremity. (Id. at 218.)

The ALJ accepts these doctors' bald conclusions despite substantial contemporaneous and contradictory evidence in the record.[6] For example, in July 2004, examining physician Dr. Robert Duca wrote that claimant "is not able to stand, sit down, or walk for extended periods of time that would be required in his workday." (Tr. 119.) Dr. Sebastian Lattuga, an orthopedic surgeon who saw plaintiff six times between August and November 2005, reported that claimant had trouble sitting and standing for long periods of time and recommended spinal fusion surgery. (Id. at 311, 315.) Likewise, in October 2005, Dr. Laxmidhar Diwan, who months earlier had performed surgery on claimant's shoulder, wrote that claimant "is unable to stand for any period

---

[6] The fact that one of the six physicians to find claimant disabled is a chiropractor does not somehow, as the Commissioner suggests, negate the clear findings of the remaining five.

8

of time and has difficulty bending, sitting, and lying down for long periods," and "remains totally disabled." (Id. at 339-40.) In light of these findings, the "consulting physician's opinions or report should be given limited weight.'" Simmons v. U.S. R.R. Ret. Bd., 982 F.2d 49, 55 (2d Cir. 1992) (quoting Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir.1990)). Similarly, the opinion of a doctor who merely reviews the claimant's file "cannot constitute substantial evidence to overcome a consensus among [claimant]'s examining doctors." Id. at 55.

Although Dr. Obedian's May 16, 2007, assessment that claimant could sit for no more than four hours per working day appears to conflict with his later May 29, 2007, assessment that claimant could sit for up to six hours per day, the ALJ provided no basis for choosing one account over the other. To the extent that Dr. Obedian might have resolved this conflict, "the ALJ failed to obtain adequate information from [claimant]'s treating physician . . . and [instead] jumped to conclusions that were not adequately supported by the consultant reports before her." Rosa, 168 F.3d at 82. In the May 29 assessment, moreover, Dr. Obedian additionally catalogues claimant's prescription medications, states that claimant "continues to suffer from persistent lower back pain" and concludes that claimant "is permanently totally disabled." (Tr. 251.) The ALJ credited only the sliver of Dr. Obedian's written opinion which suits a finding that claimant is not disabled, but ignored the vast majority of the opinion counseling otherwise.

B. Effect of medications.

i. Evidence of use and side effects.

The parties agree that the ALJ, contrary to authority, failed to consider the potential side effects of claimant's medications on his ability to work. See 20 C.F.R. § 404.1529(c)(3)(iv). Thus, the Commissioner argues that the ALJ failed to develop the record properly in this regard. To the contrary, the record contains overwhelming, uncontroverted evidence that claimant was

9

prescribed medication, took that medication and suffered the expected side effects. At best, therefore, "the ALJ reached a mistaken conclusion on an otherwise complete record." Rosa, 168 F.3d at 83.

In his narrative report dated May 29, 2007, Dr. Obedian wrote that "the medications that [claimant] takes including Dilaudid, Norco, and OxyContin cause side effects including constipation, nausea, and fatigue which further limit his ability to work and concentrate even in a sedentary type job." (Tr. 251.) Previously, in August 2005, Dr. Iqbal's consultative report listed plaintiff's current medications as Hydrocrone, Valium, Ibuprofen, Synthroid, Ambien, Zoloft, Flexeril, and Roxicet. (Id. at 214.) Although she refers generally to these assessments, the ALJ did not expressly incorporate these facts into her analysis. Further, the few specifics into which she delved are incomplete. According to the ALJ, Dr. Obedian reported in September 2006 that claimant's use of Vicodin was intermittent. In the relevant treatment notes, Dr. Obedian wrote that claimant "is only taking vicodin intermittently which has not been helping," and that he prescribed in addition the more powerful painkiller OxyContin. (Id. at 269-70.)

Claimant's testimony illustrates the predictable effects that these narcotics had on his ability to work. While attempting to answer phones for the Sanitation Department in late 2005 and early 2006, claimant was allowed to take his medications, but they reportedly made him "drowsy" and "nauseous." (Id. at 389.) Shortly after the accident, in July 2004, examining physician Dr. Duca wrote that plaintiff's "current medications render him drowsy [and] he must rest as symptoms indicate." (Id. at 119-20.) It is clear from the record, and perhaps obvious, that claimant's medications would similarly interfere with his performing any of the jobs which the vocational expert identified.

ii. Effect on ALJ's assessment of claimant's credibility.

Without expounding, the ALJ found "that the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." (Id. at 18.) The Commissioner similarly argues that claimant's subjective complaints, standing alone, cannot support a finding of disability. These contentions are puzzling in light of the extensive documented objective evidence of claimant's disability. For instance, treatment notes reveal that Dr. Obedian often altered the prescribed medications to manage claimant's pain. (See Tr. 273-74 (added Vicodin to Dilaudid); id. at 270 (added OxyContin to Vicodin); id. at 255 (claimant was "inquiring if he could get a stronger dosage for his vicodin"); id. at 255-56 (switched Vicodin with Norco).) This fact, unaddressed by the ALJ, significantly enhances plaintiff's credibility. "'Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications [or] trials of a variety of treatment modalities in an attempt to find one that works . . . lend support to an individual's allegations of intense and persistent symptoms.'" Daily v. Barnhart, 277 F.Supp.2d 226, 239 (W.D.N.Y. 2003) (quoting Soc. Sec. Ruling 96-7).

C. Claimant's daily activities.

The ALJ also cited to claimant's daily activities as apparent evidence of his capacity to work. Specifically, the ALJ mentions that claimant, with the help of his family and a nanny, prepared meals for and bathed his daughter and drove her to school. (Tr. 18.) He also performed yard work at least once. (Id. at 19.) As the Second Circuit has admonished, "it would be a shame to hold this endurance against [claimant] in determining benefits unless his conduct truly showed that he is capable of working." Balsamo v. Chater, 142 F.3d 75, 81-82 (2d Cir. 1998)

11

(internal quotation marks omitted). Indeed, courts have routinely reaffirmed that "a claimant need not be an invalid to be found disabled." Williams, 859 F.2d at 260 (2d Cir. 1988).

The actions taken by claimant to care for his daughter and his home do not add even minimally to the RFC analysis. The ALJ, moreover, appears to have overstated claimant's abilities. The ALJ summarizes Dr. Obedian's April 2007 treatment notes as indicating that "claimant felt well enough to do yard work, but overdid it." (Tr. 19.) Dr. Obedian actually wrote that "[t]his past weekend, [claimant] did some work in his yard [but] he is having extreme pain from this." (Id. at 255.) Dr. Obedian added that claimant "feels he overdid the yard work. He is frustrated because whenever he starts to do physical work he is left in so much pain." (Id.) Likewise, the ALJ wrote that "claimant testified that he takes his child to the park and puts her on a swing." (Id. at 19.) This characterization of the record is inaccurate. In response to the ALJ's questioning, claimant testified that he could not put his daughter on a swing; indeed, he "was not able to lift or pick up [his] daughter" at all. (Id. at 405.)

D. Necessity of remand.

More than six years have passed since claimant first applied for benefits in 2005. There is not a hint of evidence in this case of fraud or malingering, and persuasive evidence exists of disability. "A remand, potentially followed by another appeal, could well delay the payment of benefits to which [claimant] appears to be entitled for still further years." Carroll, 705 F.2d at 644; see also Balsamo, 142 F.3d at 82 (remanding for calculation of benefits given four-year delay between initial application and decision on appeal).

Despite the Commissioner's request, "no useful purpose would be served here by a remand for the development of further vocational evidence." Parker, 626 F.2d at 235. "Vocational expert testimony alone does not provide the necessary substantial evidence from

which to deduce a capacity to engage in substantial gainful activity when there is overwhelming evidence to the contrary in the record." De Leon v. Sec'y of HHS, 734 F.2d 930, 934-35 (2d Cir. 1984); see also Vargas v. Sullivan, 898 F.2d 293 (2d Cir. 1990) (remanding for calculation of benefits where "there was an infinitesimal likelihood that employment of any kind would be available" to the claimant and the ALJ "ignored or misinterpreted the report and conclusions of the attending physician").

The Commissioner offers no reason for the ALJ's failing to incorporate the existing record evidence into her findings. The Commissioner argues simply that the ALJ should get a second chance to determine whether someone whose right shoulder is inutile, who is rendered drowsy and nauseous by prescription narcotics and who can very likely sit for no more than four hours per working day can nonetheless check tickets at a race track, sort nuts coming down a conveyor belt or wrap bands around cigars. The Court will not sanction such a pointless exercise when proper application of the law to the existing record permits a single conclusion: that claimant is disabled and entitled to benefits. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").

## III. Conclusion.

For the reasons given above, as stated at oral argument, the Court remands this case for the calculation of benefits from the disability onset date alleged in claimant's initial SSA application.

SO ORDERED.

Dated: Brooklyn, New York
      March 2/, 2011

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge